IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUSTIN S. WENTZ, | ) <br> ) <br> ) |
| Plaintiff | ) <br> )    20-cv-1853-NR |
| v. | ) <br> ) <br> ) |
| BLACK & DECKER (U.S.) INC., | ) <br> ) |
| Defendant. | ) <br> ) |

## OPINION

### J. Nicholas Ranjan, United States District Judge

This case stems from an unfortunate workplace accident. On August 16, 2018, Plaintiff Justin Wentz was using a Black & Decker Porter Cable Model 7519 router as part of his job as a woodworker, when the router "kicked back." ECF 41-1, 11:4-5; 33:12-14. He lost two fingers. *Id.* at 77:18-25. In bringing strict products liability, negligence, and breach-of-warranty claims, Mr. Wentz blames Black & Decker – alleging that it defectively designed the router and did not include adequate safety warnings. Black & Decker disputes this account and claims that Mr. Wentz and his employer are to blame for his injuries.

To bolster his theory of the case, Mr. Wentz has proffered two expert opinions. Both experts assert that the router was defective and unreasonably dangerous. But Black & Decker argues that the Court should exclude these opinions as unreliable under *Daubert v. Merrell Dow Pharmaceuticals.* 509 U.S. 579 (1993). Without those experts, Black & Decker further contends that Mr. Wentz simply does not have enough evidence for a jury to rule in his favor. Accordingly, Black & Decker also moves for summary judgment.

1

After carefully considering the parties' arguments, the record, and the applicable law, the Court finds that neither expert should be completely excluded. That finding results in key factual disputes, such that summary judgment is not appropriate. The Court will therefore only grant in part the motions to exclude and will deny the summary-judgment motion in its entirety.

## FACTUAL BACKGROUND[1]

Mr. Wentz began working at Schutte Woodworking in June of 2018. ECF 41-1, 10:21-25. He was 18 years old at the time and had just finished high school. *Id.* at 10:16-20. Still, Mr. Wentz had ample experience with many tools, including routers. *Id.* at 18-20, 22. He learned from his grandfather as a young child, and he took wood shop classes throughout his schooling. *Id.* He had not previously had any woodworking accidents or injuries. *Id.* at 20:15-23.

At Schutte Woodworking, Mr. Wentz was supervised and trained by the owner, Steve Rimpa. ECF 41-15, 26:9-25. However, Mr. Rimpa did not provide specific safety instructions on using a table router. ECF 41-1, 45:20-23. There were no warning signs posted on the wall. *Id.* at 38:17-39:1. And the safety manuals for the various tools weren't available either; they were technically available upon request, but they were stored in a separate office space. ECF 41-15, 25:16-26:8. That said, Mr. Rimpa claims to have trained all of his employees about the dangers of kickback and how to respond to it. *Id.* at 32:8-24.

Mr. Wentz used the router in question and its accompanying base for the first time one day before his accident occurred. ECF 41-1, 41:2-25. Mr. Rimpa installed a new router bit and demonstrated how to use the machine. *Id.* at 53-54. He guided Mr. Wentz through several attempts. *Id.* Mr. Wentz then performed 10-14 runs by himself, which went off without a hitch. *Id.* at 55-56. But the router blade suddenly

---

[1] The Court considers the evidence in the light most favorable to Mr. Wentz and resolves all reasonable inferences in his favor, as required at this stage.

2

"kicked back" after catching on a knot. *Id.* at 64-66. As a result, the blade amputated Mr. Wentz's right ring and pinky fingers. *Id.*

## DISCUSSION & ANALYSIS

Mr. Wentz brings three claims against Black & Decker: negligence (Count I); strict products liability (Count II) and breach of the implied warranty of merchantability (Count III). ECF 1-3. Because Black & Decker's motions to exclude expert testimony will affect the evidence the Court will consider on summary judgment, the Court turns first to those motions.

Mr. Wentz seeks to introduce two expert reports and accompanying testimony in support of his claims. Black & Decker objects, arguing that neither satisfies the requirements of *Daubert*. The Court must therefore evaluate whether the expert evidence evinces "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). "As gatekeeper, a trial judge has three duties: (1) confirm the witness is a qualified expert; (2) check the proposed testimony is reliable and relates to matters requiring scientific, technical, or specialized knowledge; and (3) ensure the expert's testimony is 'sufficiently tied to the facts of the case' so that it 'fits' the dispute and will assist the trier of fact." *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 832 (3d Cir. 2020) (quoting *Daubert*, 509 U.S. at 591)). "The proponent of the expert testimony bears the burden to show by a preponderance of the evidence that their expert's opinion is reliable." *Whyte v. Stanley Black & Decker, Inc.*, 514 F. Supp. 3d 684, 691 (W.D. Pa. 2021) (Ranjan, J.).[2]

While the Court agrees that some elements of each proffered report are objectionable and must be excluded, neither deserves to be fully excluded.

---

[2] No party has requested an in-person *Daubert* hearing, and the Court finds that such a hearing is unnecessary, as there are no factual disputes or areas of the experts' reports that require clarification. *See Oddi v. Ford Motor Co.*, 234 F.3d 136, 154 (3d Cir. 2000).

3

I. **The motion to exclude testimony and evidence from William Kitzes will be granted in part and denied in part.**

As an initial matter, the Court finds that Mr. Kitzes qualifies as an expert for purposes of this case. An expert must "possess specialized expertise" to meet the requirements of Rule 702. *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir 2008) (quoting *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir.2003)). That is, he or she must have some relevant "skill or knowledge greater than the average layman." *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000) (cleaned up). This can be based in "practical experience as well as academic training and credentials." *Id.*

Mr. Kitzes is a board-certified Product Safety Manager and Hazard Control Manager. ECF 41-27, p. 8. He has over 30 years of experience in that field and has obtained multiple advanced certificates. *Id.* It is clear that over several decades, Mr. Kitzes has worked on product safety across a variety of industries. Though Black & Decker quibbles that Mr. Kitzes is not an expert in routers or in warnings, *Daubert* does not require that his expertise be so specific. *Pineda,* 520 F.3d at 244 ("We have held that a broad range of knowledge, skills, and training qualify an expert. … It is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the Court considers most appropriate." (cleaned up)). The bulk of Mr. Kitzes's expert opinion involves product safety protocols that apply across industries, not to the technical intricacies of routers. Because of his educational background, professional association memberships, and work experiences, he is qualified to provide expert evidence to that effect.

Once an expert has been qualified, the evidence he or she submits must also prove reliable and must fit the case – that is, it must "help[] the trier of fact to understand the evidence or to determine a fact in issue. This condition goes primarily

to relevance." *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 81 (3d Cir. 2017) (cleaned up). A court can consider a variety of factors, including: "(1) whether a method consists of a testable hypothesis; (2) whether the method is subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put." *Whyte*, 514 F. Supp. 3d at 694 (citation omitted).

The Court finds that while the most of Mr. Kitzes's opinions have sufficient indicia of reliability and are relevant to the case, others do not pass muster.

### A.  Mr. Kitzes's opinion on the NEISS (Opinion 4) will be excluded.

In his report, Mr. Kitzes provides eight discrete opinions, which all go to his ultimate conclusion that Black & Decker failed to apply product safety management measures in connection with the router at issue. For Opinion 4, Mr. Kitzes states that "the National Electronic Injury Surveillance System (NEISS) [] receives reports from hospital emergency rooms in about a hundred hospitals around the country…. Based on the incoming reports of actual injuries, [it] estimates the total number of estimated injuries." ECF 41-26, p. 11. "From 2011 through 2014, the year of the manufacture of the subject router, that would be well over 5,000 injuries publicly available to Stanley Black & Decker that they failed to review, analyze, or account for in the production of the Porter Cable Model 7519." *Id.* In his deposition, Mr. Kitzes asserted that this NEISS data provided an opportunity to evaluate safety data and "take corrective action." ECF 43-2; 59:17-25. "But as far as I know," he said, "according to their deposition, they never looked into it." *Id.* at 78:3-8.

The Court finds that Opinion 4 must be excluded, for at least two reasons. First, Mr. Kitzes never explained exactly how and when Black & Decker should have

5

examined the data, or what specifically it should have reviewed. Second, the data is not useful. Importantly, Mr. Kitzes conceded during his deposition that when writing his report, he did not have access to further details about the injuries captured by NEISS. *Id.* at 90:7-19 ("[T]hat is readily available to Black & Decker for their routers, but not to me."); 92:20-25 ("[The Commission is] not allowed to identify the manufacturer[] to me."). And, if other manufacturers' routers were involved in the reported incidents, Black & Decker wouldn't have access either. *Id.* at 93:19-24 (agreeing that "if 1,499 of the [1,500] instances…were from other manufacturers of routers…Black & Decker couldn't obtain those reports"). Moreover, the reports lack detail pertaining to the cause and nature of router injuries. *See id.* at 94:25-95:25 (explaining that the reports "don't tell you whether any of those router injuries…involved binding," "how many involve kickback of the workpiece," or "how many of those [1,500] estimate[d] router injuries involve a hand-held router versus a router in a table").

In light of this unhelpful and incomplete data, including on the cause of the injuries, the Court cannot find that there are sufficient "good grounds" to support the opinion. Therefore, Opinion 4 is excluded, and the Court will not consider it in assessing Black & Decker's summary-judgment motion.

**B.    Mr. Kitzes's proposed warning exemplar will be excluded.**

As part of his report, Mr. Kitzes also included a sample warning "developed based on publicly available router warnings and instructions." ECF 43-1, p. 30. But he did not provide additional analysis or evidence that this warning would have worked better, such as through testing or focus groups. *See* ECF 45-1, pp. 29-30. Nor did he explain how his proposed warning better fit the safety standards cited. Without that support, Mr. Kitzes effectively provides no more than speculation. This doesn't meet the requirements of *Daubert* and so is excluded. It will not be considered as part of deciding Black & Decker's summary-judgment motion. *See Ruggiero v.*

*Yamaha Motor Corp.*, 778 F. App'x 88, 93 (3d Cir. 2019) (affirming exclusion of Mr. Kitzes's opinion regarding warning location where, among other issues, he "failed to perform any tests or focus groups").

That said, while the specific warning exemplar will be excluded, the Court will not exclude Mr. Kitzes's other opinions, including his opinions on the deficiencies of Black & Decker's warnings.

### C. The remainder of Mr. Kitzes's opinions are admissible.

The remainder of Mr. Kitzes's report meets the *Daubert* standard. Though his opinions are relatively broad, they are supported by the references he provides and provide helpful insight into Black & Decker's safety protocol – or lack thereof.

First, Mr. Kitzes opines that Black & Decker failed to act as a reasonably prudent manufacturer. ECF 43-1, p. 10. Second, he opines that Black & Decker failed "to apply the accepted principles of product safety management," including by not following standards "identified in the American National Standards Institute…Risk Assessment." *Id.* at pp. 10-11. Third, he opines that under major industry standards, Black & Decker's warnings for its router were inadequate, including in its instruction manuals. *Id.* at pp. 11-12. Fourth, he concludes that based on Black & Decker's inaction – including its failure to follow internal policies – Black & Decker showed "clear and conscious disregard for the safety of the router users." *Id.* at p. 12.

The "strong preference for admitting any evidence that may assist the trier of fact" guides the Court's analysis. *Pineda*, 520 F.3d at 243 (citation omitted). Typically, "an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." *Id.* at 244. That's because "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Ultimately,

7

"[t]he test of admissibility is not whether a particular scientific opinion has the best foundation, or even whether the opinion is supported by the best methodology or unassailable research. Instead, the Court looks to whether the expert's testimony is supported by 'good grounds.' The standard for reliability is 'not that high.' It is 'lower than the merits standard of correctness.'" *Karlo* 849 F.3d at 81 (quoting *In re TMI Litig.*, 193 F.3d 613, 665 (3d Cir. 1999) (cleaned up)).

Black & Decker argues that these opinions "are not supported by any identifiable scientific methodology" and are instead "based on nothing more than [Mr. Kitzes's] own interpretation of some potentially relevant standards[.]" ECF 43, p. 6. Not so. The American National Standards Institute's safety standards Mr. Kitzes references are established in the industry. ECF 43-1, p. 11 (explaining that "a wide array of major industry members [are] on the Committee"); *id.* at p. 12 (referencing the ANSI standard which "the National Electrical Manufacturers Association…and other major industry organizations developed"). There is nothing to suggest that Mr. Kitzes's description of these as industry standards is not accurate. *Compare Sunbury*, 949 F.3d at 834 ("Take the reports. They lack any suggestion that the…theory has been subject to peer review or enjoys general acceptance. … Or any standards controlling the theory's application. Each, instead, comes from [the expert's] anecdotal experience in his grandfather's appliance shop[.]"). And many manufacturers (and other businesses) appear to use ANSI industry standards as a guide.[3] This indicates broad participation by a variety of stakeholders. As such, they

---

[3] *See* "American National Standards (ANS) Introduction," ANSI, <ansi.org/american-national-standards/ans-introduction/overview#introduction> (explaining that "[t]housands of individuals and representatives of companies, government agencies, industry, labor, and trade associations, consumer groups, academics, and others voluntarily participate in the development of American National Standards (ANS)").

are continually revisited and commented upon.[4] To be sure, mere reliance on industry standards does not automatically render an expert opinion reliable. *Whyte*, 514 F. Supp. 3d at 695-96. But that doesn't mean industry standards are irrelevant, either.

Broadly, Mr. Kitzes opines that Black & Decker absolutely failed to follow basic risk assessment methods and mitigate well-known risks. For example, Mr. Kitzes points out that articles on popular woodworking websites reflect an awareness of router kickback. ECF 43-1, pp. 18-21. Though these excerpts are not from scientific journals or other peer-reviewed publications, they demonstrate that kickback was known to the woodworking public – reasonably inferring that Black & Decker, as a manufacturer of products to serve that public – would have also known of it, and should have taken action in response.

Yet, examining the deposition of Thomas Bodine – Black & Decker's Safety Assurance Manager – Mr. Kitzes observed that Mr. Bodine "had absolutely no understanding" of the phenomenon. *Id.* at p. 11. As a safety professional, Mr. Kitzes's reaction was very strong. *E.g.*, ECF 43-2, 53:2-13 ("[T]he OSHA report [that] talks about router kickback…. It is dated 1999. So how Mr. Bodine could never have heard about kickback safety or kickback issues is both absurd and appalling. … I couldn't believe it when I read it."); 130:4-131:15 ("30 years of everybody else in the world knowing and trying to solve kickback. And a…24 year veteran of safety assurance at Black & Decker claims he never heard of it. I mean, that is so astonishing to me. I can't even describe it. … The fact that he said it wasn't on his radar, that he has no

---

[4] ANSI, ANSI ESSENTIAL REQUIREMENTS: DUE PROCESS REQUIREMENTS FOR AMERICAN NATIONAL STANDARDS § 4.7 (March 2, 2022), https://share.ansi.org/Shared%20Documents/About%20ANSI/Current_Versions_Proc_Docs_for_Website/ER_Pro_current.pdf ("American National Standards shall be kept current and relevant by means of timely revision, reaffirmation, or action to stabilize.").

understanding that it had to be addressed, when just about everybody else in the world understands and is making products to reduce the risk. But he never heard of it at Black & Decker? That is appalling to me. And a reckless and conscious disregard. It just is.").

Black & Decker insinuates that Mr. Kitzes's "own belief that the manual should have explicitly mentioned the hazards related to kickback" fails to satisfy *Daubert*. ECF 43, p. 8. But Mr. Kitzes's assertion is that failure to include warnings about kickback is one of the many ways Black & Decker categorically failed to mitigate risks well known in the industry. While focus groups and testing would be necessary to provide reliable opinions regarding exact wording, graphics, or particular location of a warning, a more general opinion on the necessity of some type of kickback warning is permissible. *E.g.*, ECF 43-2, 123:6-10 ("Q: It is your opinion this kickback amputation hazard is one of those major hazards that needed to be addressed? A: Absolutely.").

The Court finds that Mr. Kitzes's assessment finds support in evidence – *e.g.*, the OSHA report, woodworking website links, and Bodine deposition. Moreover, as a safety management professional, Mr. Kitzes's context would help the jury in evaluating the credibility of witnesses such as Mr. Bodine. *See Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806-07 (3d Cir. 1997) (explaining that the *Daubert* factors "are neither exhaustive nor applicable in every case").

At trial, Black & Decker is certainly free to challenge Mr. Kitzes's conclusions or otherwise challenge his methodology or qualifications before a jury. But Mr. Kitzes's perspective on Black & Decker's alleged egregious deviation from generally accepted norms would help the jury in determining whether Black & Decker acted negligently or whether its product was defectively designed. The Court will therefore admit the remainder of Mr. Kitzes's report and testimony.

## II. The motion to exclude testimony and evidence from James Glancey will be granted in part and denied in part.

Mr. Wentz also submitted an expert report from Dr. James Glancey – an engineer and professor of machine design and development. ECF 45-1, p. 2. The Court finds that Dr. Glancey also qualifies as an expert. Dr. Glancey teaches about "design science, product and process development, design for manufacture, and failure analysis." ECF 45-1, p. 2. He works on power tool designs in biomechanics. *Id.* at p. 3. He has several patent applications "pertain[ing] to the use of composites in hand and power tool design" and has completed "product design work [that] has led to commercialized products." *Id.* Dr. Glancey is also a hobbyist user of power tools. *Id.* at p. 2. Based on his decades of experience, he certainly possesses more specialized knowledge than the average layman about product design. *Elcock*, 233 F.3d at 741. And that knowledge gives him a heightened understanding of the important role product warnings play from an engineering perspective. *Pineda*, 520 F.3d at 245 ("[The expert] was substantively qualified to testify on [warnings] because a proper warning is also a solution to an engineering problem.").

### A. Dr. Glancey's proposed warning exemplar will be excluded.

Dr. Glancey's report included substantially the same proposed warning that Mr. Kitzes included in his report. ECF 45-1, p. 28. And like Mr. Kitzes, Dr. Glancey did not indicate that he had conducted evidentiary analysis regarding its efficacy. *See* ECF 45-1. Therefore, for the same reason, it is excluded. *Compare Pineda*, 520 F.3d at 245 ("[A]s an engineer, [the expert] did not purport to opine on how the warning should be worded or how it should appear in order to effectively convey its message. … He only testified that neglecting to follow the steps of an instruction…might result in failure of the liftgate glass, and that a warning was necessary to alert a technician to the potential problem.").

### B.     The remainder of Dr. Glancey's opinions are admissible.

Dr. Glancey opined that Black & Decker failed to follow proper safety procedures, which led to both design and warnings defects.  For instance, he contends that "[h]ad a [Failure Modes and Effects Analysis] been used to identify the inherent hazard of the Porter Cable model 7519 router, engineers would have been able to employ standard engineering control methods to either design out, guard against or warn of this hazard in order to prevent Mr. Wentz from being exposed to hazards caused by the uncontrolled movement of the workpiece, or informing him of said danger when using a router table."  ECF 45-1, p. 29.  Like that of Mr. Kitzes, Dr. Glancey's rebuke of Black & Decker's lack of action is stark.  *Id.* at p. 30 ("It is not only incorrect, but dangerous, naïve and disingenuous for B&D to claim no knowledge of 'kickback' occurring with their routers branded Porter Cable.  Evidence in the U.S. and Europe demonstrate this phenomenon and hazard is well known and must be considered when designing a router and designing instructional materials for these router products.").

As with Mr. Kitzes, Black & Decker argues that Dr. Glancey's opinions are based "on nothing more than his own interpretation of the facts involved as well as his own understanding of the concept[s]."  ECF 45, p. 3 (cleaned up).  But that gives short shrift to what Dr. Glancey did and the basis for his opinions – which are all predicated on an analysis of the relevant items, knowledge pertaining to the risks of kickback, and generally accepted safety and engineering protocols.

Dr. Glancey's report demonstrates a thorough review of available information regarding Mr. Wentz's incident and kickback in general.  He inspected Schutte Woodworking and examined photos of Mr. Wentz's worksite.  ECF 45-1, pp. 7-9.  He examined the specific bits Mr. Wentz had used, as well as the wood Mr. Wentz had been working on.  *Id.* at pp. 10-11.  He also analyzed manuals Black & Decker provided and provided an engineering analysis.  *Id.* at pp. 11-16; *e.g., id.* at p. 14

("[T]his instruction and the definition provided for climb-cutting are not correct when the router is mounted on a router table. In fact, the bit would rotate in a counterclockwise manner[.]"). Thus, Dr. Glancey examined the scene and utilized his engineering knowledge – accumulated over decades of experience – in interpreting what happened here.

The Court finds that Dr. Glancey's analysis of router bits would assist the jury in this case. *E.g.*, ECF 45-3, 77:12-22 (explaining exactly which bit he contends should have been provided with the router); 95:25-96:15 (referencing a researcher advocating for "simple rotating router bits" and "limiting the bite"); 97:18-98:11 (explaining the physics behind bite and cutting). That is not to say that Dr. Glancey's theory is definitively correct. For instance, Black & Decker takes issue with the fact that Dr. Glancey did not conduct testing of his theories. ECF 45, p. 7. But lab testing is not a prerequisite for admissibility. *See* Fed. R. Evid. 702 Advisory Committee Notes (2000) ("Some types of expert testimony will be more objectively verifiable, and subject to the expectations of falsifiability, peer review, and publication, than others. Some types of expert testimony will not rely on anything like a scientific method, and so will have to be evaluated by reference to other standard principles attendant to the particular area of expertise."). Again, Black & Decker is free to challenge Dr. Glancey's methodology and opinions at trial, but the Court does not find that his opinions are inadmissible.

### III. The summary-judgment motion will be denied.

The Court now turns to Black & Decker's summary-judgment motion, and will consider the evidence submitted in connection with it, with the exception of the portions of Mr. Wentz's expert opinions that have been excluded, as discussed above.

At summary judgment, the Court must decide whether the evidence presented reflects "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 251-52 (1986). Black & Decker contends that Mr. Wentz does not have enough evidence to get to a jury, especially if his expert evidence is excluded. But the admissible expert evidence, combined with other factual disputes apparent from the record, raises sufficient disputes of material fact to allow the case to proceed to trial.

Summary judgment is only appropriate if there is no genuine dispute of material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is genuine if "there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." *Resch v. Krapf's Coaches, Inc.*, 785 F.3d 869, 871 n.3 (3d Cir. 2015) (citation omitted). At this stage, the Court must view all evidence in the light most favorable to Mr. Wentz as the non-moving party and must resolve all reasonable inferences in his favor. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Importantly, the Court cannot assess credibility at this stage. *Goldenstein v. Repossessors, Inc.*, 815 F.3d 142, 146 (3d Cir. 2016).

Applying this familiar standard, the Court finds that material disputes of fact remain that will require a jury to resolve. So, summary judgment is inappropriate.

### A. Strict products liability.[5]

To prevail on this claim, Mr. Wentz must show that the Black & Decker router at issue was unreasonably dangerous. *Weiner v. Am. Honda Motor Co., Inc.*, 718 A.2d 305, 307-08 (Pa. Super. 1998). The parties agree that there was no manufacturing defect present; the router was properly constructed according to its design. ECF 47, p. 10 n.2. So Mr. Wentz must prove that the router was defectively designed or that lack of warnings rendered it unreasonably dangerous. *Phillips v. A-Best Prods., Co.*, 665 A.2d 1167, 1170-71 (Pa. 1995).

---

[5] Though count 1 of Mr. Wentz's complaint is negligence, the Court addresses his strict-liability claim first, to mirror the parties' briefing.

Under Pennsylvania law, there are two methods to prove a design defect: the risk utility test and the consumer expectation test. Under the former, "the probability and seriousness of harm caused by the product [must] outweigh the burden or costs of taking precaution" in the eyes of a reasonable person. *Tincher v. Omega Flex*, 104 A.3d 328, 389 (Pa. 2014). A safer alternative design must also have existed. *Gaudio v. Ford Motor Co.*, 976 A.2d 524, 532 (Pa. Super. 2009) (citation omitted). Under the latter, the risks of harm from the product must be "greater than a reasonable buyer would expect." *Tincher*, 104 A. 3d at 387 (quoting *Welch v. Outboard Marine Corp.*, 481 F.2d 252, 254 (5th Cir. 1973)).

Here, Dr. Glancey put forth an alternative product design that he argues was feasible and would have been safer. He states that "anti-kickback bits that limit the wood removal per rotation of the bit prevent bi[n]ding between the workpiece and bit could be included with the sale of each B&D router," including by contracting with bit suppliers to do so. ECF 41-24, pp. 26-27. Of course, a jury might agree with Black & Decker that "[t]here are too many difficulties a router manufacturer faces in deciding which types of router bits would need to be included with a router." *See* ECF 45, p. 5. But a reasonable jury could also conclude that, given the risk and potential severity of kickback-related injuries, it is unreasonably dangerous not to include an anti-kickback bit.

A product can also be defective if insufficient warnings make it unreasonably dangerous. *Whyte*, 514 F. Supp. 3d at 697 (citing *Pavlik v. Lane Ltd.*, 135 F.3d 876, 881 (3d Cir. 1998)). To that end, Mr. Kitzes and Dr. Glancey both reported their belief that the router at issue had inadequate warnings about kickback and how to prevent it. Black & Decker's experts disagree. Ultimately, a "battle of the experts" is for the

jury to resolve. *In re Johnson & Johnson Talcum Powder*, 509 F. Supp. 3d 116, 190 (D.N.J. 2020). Reasonable minds could differ on the issue. *Tincher*, 104 A.3d at 335.[6]

For either type of defect, Mr. Wentz must also establish that that defect caused his injury. *Phillips*, 665 A.2d at 1171. That means that an alternate design would have prevented the injury, *Gaudio*, 976 A.2d at 532, or that improved warnings would have helped Mr. Wentz avoid the risk. *Phillips*, 665 A.2d at 1171. Here, two critical disputes of fact exist.

First, the parties dispute exactly what happened when Mr. Wentz's fingers were amputated. Mr. Wentz maintains that a kickback occurred. ECF 41-1, pp. 65-66. Black & Decker responds that Mr. Wentz "failed to complete [a] cut and let go of the piece," and his "hand missed the work piece and went into the active router bit." ECF 40, p. 6. (citing ECF 41-15, pp. 34, 47). A jury is the proper body to weigh the evidence – including the credibility of the experts, Mr. Wentz, and his employer, Mr. Rimpa – to determine whether user error or product defect was to blame.

Second, the parties dispute whether Mr. Wentz would have heeded proper warnings had they been given. Ordinarily, a "plaintiff enjoys the benefit of a rebuttable presumption that an adequate warning would have been heeded if it had been provided." *Whyte*, 514 F. Supp. 3d at 700 (cleaned up). Here, Mr. Wentz admitted that he did not read the warnings in the router's manual. ECF 41-1, p. 32:19-33:17. In fact, his employers never provided them. ECF 41-15, pp. 25-26. And he "noticed," but did not actually read, the warning labels on the router itself. ECF 41-1, pp. 33-35. According to Black & Decker, Mr. Wentz therefore cannot prove

---

[6] Even though the Court has excluded Mr. Wentz's experts' warning exemplars, his experts' opinions include additional evidence as to the deficiencies of the warnings Black & Decker provided. Mr. Kitzes, for example, opines that Black & Decker failed to warn consumers as to the obvious risk of kickback and did not comply with industry warning standards. ECF 43-1, p. 39. He also can discuss factors that make a warning adequate. ECF 43-2, pp. 45-47. Dr. Glancey performed an engineering analysis of instructions and warnings provided. ECF 45-1, pp. 11-16.

causation as a matter of law. The Court disagrees. Mr. Wentz provided additional testimony about his routines and practices that create a dispute of fact on this issue. He explained that he customarily read manuals for power tools that his grandfather gave him. *Id.* at pp. 30-31. And in his shop classes at school, there were signs on the wall with warnings about tools, which he noticed or reviewed. *Id.* at p. 38. The fact that Mr. Wentz did not read the warnings in this instance does not necessarily mean he would not have read a different or more prominent warning – especially one affixed to the router itself.

### B.     Negligence.

Mr. Wentz's negligence claim has four elements: duty, breach, causation, and actual injury. *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1008 (Pa. 2003). Black & Decker argues that Mr. Wentz cannot prove any breach of duty, or that any alleged brief was the cause of his injury. ECF 40, p. 26.

Black & Decker points to its purported compliance with industry standards to show lack of breach. ECF 40, pp. 28-29. But industry standards are only one ingredient, which the jury can assess along with the rest of the evidence. *E.g., Bourgeois v. Snow Time, Inc.*, 242 A.3d 637, 657-59 (Pa. 2020). As this Court has previously explained, Black & Decker's "duty was not to comply with industry standards; its duty was to exercise reasonable care." *Whyte*, 514 F. Supp. 3d at 704 (cleaned up). And "the issue of whether a duty is breached is a question properly reserved for a fact-finder." *Id.* at 703 (citation omitted). As for causation, there are disputes of material fact, as noted in the context of Mr. Wentz's strict-liability claim. *Id.* at 702-703.

### C.     Breach of implied warranty.

Finally, Mr. Wentz alleges that Black & Decker's router was not "fit for the ordinary purposes for which such goods are used." 13 Pa. Cons. Stat. § 2314(a). "The elements that prove a breach of the implied warranty of merchantability are

essentially the same as those to recover on the strict products liability claim." *Reese v. Ford Motor Co.*, 499 F. App'x 163, 166 (3d Cir. 2012) (citation omitted). Because the Court denied Black & Decker's motion as to strict liability, it will also deny summary judgment on this count. It will be for the jury to answer whether Mr. Wentz was using the router "within its ordinary purpose," and whether the design or warnings made the router "fit for such purpose." *Whyte*, 514 F. Supp 3d at 705-06 (cleaned up).

Ultimately, a jury could rule for Mr. Wentz on any or all of the counts alleged given the disputes of material fact. The motion for summary judgment will therefore be denied in its entirety.

## CONCLUSION

For the foregoing reasons, Black & Decker's motion to exclude the testimony of William Kitzes will be **GRANTED** in part and **DENIED** in part, and its motion to exclude the testimony of James Glancey will also be **GRANTED** in part and **DENIED** in part. The motion for summary judgment will be **DENIED**. An appropriate order follows.

DATE: January 19, 2023                                    BY THE COURT:

                                                          /s/ *J. Nicholas Ranjan*
                                                          United States District Judge